Christopher A. Seeger
David R. Buchanan
SEEGER WEISS LLP
550 Broad Street, Ste. 920
Newark, NJ 07102
Tel.: (973) 639-9100
Fax: (973) 639-9393
E-mail: cseeger@seegerweiss.com
E-mail: dbuchanan@seegerweiss.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Juan Barrera, | )    Index No. |
| | ) |
|        Plaintiff, | ) |
| | ) |
| | )    **COMPLAINT AND** |
|      v. | )    **DEMAND FOR JURY** |
| | )    **TRIAL** |
| BMW North America, LLC, BMW AG, | ) |
| Audi AG, Audi of America Inc., Audi of | ) |
| America, LLC, Bentley Motors Limited, | ) |
| Daimler Aktiengesellschaft, Mercedes-Benz | ) |
| US International, Mercedes-Benz USA, | ) |
| Mercedes-Benz Vans, LLC, Dr. Ing. h.c.F. | ) |
| Porsche AG, Porsche Cars of North | ) |
| America, Inc., Volkswagen AG, | ) |
| Volkswagen Group of America, Inc., | ) |
| | ) |
|        Defendants. | ) |
| | ) |
| | ) |

Juan Barrera, ("Plaintiff") on behalf of himself and all others similarly

1

situated, on personal knowledge as to the facts concerning himself and on information and belief as to all other matters, and based on the investigation of counsel, brings this class action pursuant to federal and state antitrust, unfair competition, consumer protection, and unjust enrichment laws and alleges as follows:

## NATURE OF ACTION

1.     This action arises from an unlawful conspiracy among the Defendant manufacturers to deprive Plaintiff and the Classes (defined herein) of the benefits of open, robust competition in the market for German Luxury Vehicles.  For years, Audi AG, Audi of America Inc., Audi of America, LLC (together, "Audi"), Bentley Motors Limited ("Bentley"), BMW AG, and BMW North America, LLC (together, "BMW") Daimler Aktiengesellschaft ("Daimler AG"), Mercedes-Benz US International, Mercedes-Benz USA, Mercedes-Benz Vans, LLC (together, "Mercedes"), Dr. Ing. h.c.F. Porsche AG, Porsche Cars of North America, Inc. (together, "Porsche"), Volkswagen AG, Volkswagen Group of America, Inc. (together, "Volkswagen"), (together, the "Defendants"), and other unnamed conspirators, unlawfully agreed to fix costs, increase prices, and eliminate competition with respect to key technologies and other aspects of the luxury cars sold or leased to U.S. consumers under the Audi, BMW, Bentley, Mercedes-Benz, and Porsche brands ("German Luxury Vehicles").  Defendants' unlawful conduct

caused injury to Plaintiff and the Classes.

2.      Defendants' conspiracy is currently under investigation by European Commission ("EC") and other competition authorities and has been described, in part, in a series of recent news reports.  Two conspirators, Volkswagen and Mercedes, reportedly are cooperating with the EC investigation and have admitted their role(s) in the collusion in exchange for leniency.  In a July 4, 2016 submission to European authorities, Volkswagen admitted Daimler, BMW, Volkswagen, Audi and Porsche coordinated on the development of their vehicles, costs, suppliers and markets "for many years –at least since the 1990s and to this day."

3.      Since at least the 1990s, Defendants have colluded and shared competitive information through dozens of "working groups" comprising hundreds of employees.  The working groups collectively held hundreds, if not thousands, of meetings throughout the course of Defendants' conspiracy.  The working groups were referred to as the "groups of five" and met "regularly several times a year" throughout Germany, as well as at major auto shows.  In its filings with European authorities, Volkswagen indicated that "more than 1,000 relevant meetings took place in the last five years."  The meetings were, however, non-public and referred to as "secret" meetings.

4.      One subject of Defendants' collusion now coming to light was the "AdBlue" tank Defendants used in their diesel vehicles.  Specifically, Defendants

agreed on the size of the AdBlue tanks, fixing their respective costs and otherwise eliminating and restraining competition and innovation on at least that aspect of their vehicles.

5.     Defendants' unlawful collusion substantially affected interstate trade and commerce in the United States and caused antitrust injury to Plaintiff and members of the  Classes in the United States, including eliminating or restricting technology choices and causing Plaintiff and the Classes to pay inflated, supra-competitive prices for the German Luxury Vehicles they bought or leased.

## JURISDICTION AND VENUE

6.     Plaintiff brings this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, for damages, as well as injunctive and other equitable relief, against Defendants for violating Section 1 of the Sherman  Act, 15 U.S.C. § 1.  Plaintiff also seeks compensatory and punitive damages, restitution, and other relief under state antitrust, unfair competition, consumer protection and unjust enrichment laws. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses  under federal and state law.

7.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 26, 15 U.S.C. § 1, and 28 U.S.C. §§ 1331 and 1337, as well as jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367 because this is a class action in which the matter or controversy exceeds the sum of

$5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from the Defendants.

8.      Venue is proper in this District pursuant to 15 U.S.C. § 22, and 28 U.S.C. §§ 1391 (b), (c), and (d), because one or more of the Defendants reside in, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District, a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and a substantial portion of the affected interstate trade and commerce (discussed below) has been carried out in this District.

9.      This Court has personal jurisdiction over the Defendants because each, either directly, or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted  business in the United States, including in this District; (b) directly or indirectly sold or marketed  substantial quantities of German Luxury Vehicles in the United States, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d)  were engaged in an illegal conspiracy in restraint of trade that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District.  Defendants also conduct

business throughout the United States, including in this District, and have purposefully availed themselves of the laws of the United States.

10.    Defendants engaged in conduct inside and outside the United States that caused intended, direct, substantial, and reasonably foreseeable anticompetitive effects on interstate commerce within the United States.

11.    Defendants' products are sold in interstate commerce and Defendants' conduct was and is within the flow of, intended to, with substantial effect on interstate commerce of the United States.

12.    German Luxury Vehicles manufactured by Defendants outside the United States and sold within the United States constitute import commerce as goods brought into the United States for sale. Defendants' anticompetitive conduct, and its effect on United States commerce, proximately caused antitrust injury within the United States.

13.    Defendants' unlawful conduct substantially affected commerce throughout the United States, causing injury to Plaintiff and the Classes. Defendants, directly and through their agents, engaged in anticompetitive activities affecting all states, through coordinated activities related to the development of Defendants' vehicles, as well as Defendants' costs, suppliers and markets.

6

14.     Defendants' unlawful conduct caused persons within the United States who purchased or leased a new German Luxury Vehicle to pay unlawfully inflated prices.

## PARTIES

### Plaintiff

15.     Plaintiff seeks to represent all persons and entities who, from at least as early as January 1, 1990 through such time as the anticompetitive effects of the Defendants' conduct ceased ("Class Period"), purchased or leased a new German Luxury Vehicle in the United States, which was manufactured or sold by any of the Defendants.

16.     Plaintiff Juan Barrera ("Barrera") is a citizen of the state of Texas, domiciled in the city of McAllen.   In or about 2015, Barrera purchased a new German Luxury Vehicle, specifically a Mercedes-Benz 2500 Sprinter, manufactured by Daimler AG.

### Defendants

### Audi

17.     Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany.   Audi AG is the parent of Audi of America, Inc. and Audi of America, LLC and a wholly owned subsidiary of Volkswagen AG. Audi AG designs, develops, manufactures, and sells the German Luxury Vehicles at issue that were purchased throughout the United States, including in this District, during the

Class Period. Audi AG directs the activities of its subsidiaries which act as its agents selling German Luxury Vehicles throughout the United States.

18.     Audi of America, Inc. is incorporated in New Jersey, with its principal place of business in Herndon, Virginia.  It does business in all fifty states and the District of Columbia.

19.     Audi of America, LLC is incorporated in Delaware, with its principal place of business in Herndon, Virginia.  It does business in all fifty states and the District of Columbia.

**Bentley**

20.     Bentley is organized under the laws of the United Kingdom.  Bentley has been a subsidiary of Volkswagen AG since 1998.  Since 2012, Bentley's U.S. headquarters have been at the offices of Volkswagen Group of America in Herndon, Virginia.  Prior to that, Bentley was headquartered in Boston, Massachusetts.

**BMW**

21.     BMW AG is a German holding company headquartered in Germany. BMW AG, together with its subsidiaries, develops, manufactures, and sells cars and motorcycles worldwide, including the German Luxury Vehicles at issue that were purchased throughout the United States, including this District, during the Class Period.

22.     BMW North America, LLC is a Delaware limited liability corporation with its principal place of business in Woodcliff Lake, New Jersey.  BMW of North America is the United States importer of BMW vehicles.

**Daimler AG**

23.     Daimler AG is a foreign corporation headquartered in Stuttgart, Baden-Württemberg, Germany.   Daimler AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes the German Luxury Vehicles at issue that were purchased throughout the United States, including this District, during the Class Period.  Daimler AG is the parent company of and owns 100% of and controls Mercedes-Benz USA, LLC, which acts as the sole distributor for Mercedes-Benz brand vehicles in the United States.

24.     Mercedes-Benz USA, LLC is a Delaware limited liability corporation. Until July 2015, its principal place of business was in Montvale, New Jersey.  Its principal place of business is now in Atlanta, Georgia.  Mercedes-Benz USA LLC operates a regional sales office, a parts distribution center, and a customer service center in New Jersey.  It designs, manufactures, markets, distributes and sells the German Luxury Vehicles at issue that were purchased throughout the United States, including this District, during the Class Period.

25.     Mercedes-Benz U.S. International, Inc. is a corporation organized and existing under the laws of Alabama, with its principal place of business in Vance,

Alabama.  Mercedes-Benz U.S. International, Inc. is a wholly-owned subsidiary of Daimler AG.

26.    Mercedes-Benz Vans, LLC is a Delaware limited liability corporation with its principal place of business in Ladson, South Carolina.  Mercedes-Benz Vans, LLC is a wholly owned subsidiary of Daimler AG.

**Porsche**

27.    Dr. Ing. h.c. F. Porsche AG is a German corporation with its principal place of business in Stuttgart, Germany.  Porsche AG is a wholly-owned subsidiary of Volkswagen AG that designs, develops, manufactures, and sells the German Luxury Vehicles at issue that were purchased throughout the United States, including this District, during the Class Period.

28.    Porsche Cars North America, Inc. is incorporated in Delaware with its principal place of business in Georgia.  Porsche Cars North America, Inc. is a wholly-owned subsidiary of Porsche AG that advertises, markets, and sells German Luxury Vehicles in all fifty states, including in this District, during the Class Period. Porsche Cars North America, Inc. maintains a network of 189 dealers throughout the United States.

**Volkswagen**

29.    Volkswagen AG is a German corporation with its principal place of business in Wolfsburg, Germany.  Volkswagen AG is the parent of Volkswagen Group of America, Inc., Audi AG, Porsche AG, and Bentley.

30.    Volkswagen Group of America, Inc. is incorporated in New Jersey, with its principal place of business in Herndon, Virginia.  It does business in all fifty states and the District of Columbia, including advertising, marketing, and selling vehicles in this District and throughout the United States

## AGENTS AND CO-CONSPIRATORS

31.    Each Defendant acted as the principal of or agent for the other Defendant with respect to the alleged common course of conduct, actions, and legal violations.

32.    Robert Bosch GmbH is a multinational engineering company headquartered in Gerlingen, Germany. Robert Bosch GmbH, designs, manufactures, develops, and supplies automotive technology either directly or through its wholly owned U.S. subsidiary Robert Bosch LLC.

33.    Robert Bosch LLC is a Delaware limited liability company with its principal place of business in Farmington Hills, Michigan.  Robert Bosch GmbH wholly owns and controls Robert Bosch LLC. With its parent company, Robert

Bosch LLC, designed, manufactured, developed, and supplied technology to the Defendants for use in the German Luxury Vehicles at issue.

34.    Other unnamed people and entities are presently unknown, were or are co-conspirators with the Defendants in unlawful conduct alleged herein, and have performed acts and made statements in furtherance of the conspiracy and/or the anticompetitive conduct.

35.    Any reference in this Complaint to an act, deed or conduct of any corporation or limited liability entity means that the corporation or limited liability entity engaged in such act, deed or conduct by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

36.    Beginning at least as early as the 1990s, Defendants have shared competitive and sensitive information and have agreed and colluded concerning technology, costs, suppliers, market, emissions equipment and other competitive attributes of their luxury vehicles.

37.    Defendants' conspiracy has prompted competition investigations in the United States and elsewhere.

38.     Through scores of "working groups" that have met hundreds (if not thousands) of times, Defendants have shared non-public, commercially-sensitive information and otherwise colluded to eliminate and restrain competition by themselves.   Hundreds of Defendants' employees have been involved in this collusion.

39.     As part of their conspiracy, Defendants coordinated the size of AdBlue tanks used in their German Luxury Vehicles.

40.     AdBlue is a liquid used in Selective Catalytic Reduction ("SCR") systems to clean emissions. AdBlue is also called Diesel Exhaust Fluid ("DEF"). Urea is a component of DEF or AdBlue that, along with the SCR system, can help auto-manufacturers comply with emissions standards for diesel vehicles.

41.     In around September 2008, Defendants unlawfully agreed to reduce their costs by using 8-liter tanks for AdBlue/DEF.  According to Volkswagen, "[a]n internal Audi presentation resulted in a commitment by German automobile manufacturers at the executive level" to collusion on tank size.  Use of such tanks allegedly would save each automaker the equivalent of about €80 per vehicle.  The 8-liter tank also created more cargo room and allowance for premium vehicle options.

42.     In 2010, Defendants agreed to change the size of their AdBlue tanks for use in the U.S. to 16-liters.  Although Defendants knew that a 16-liter tank was

insufficient to meet new U.S. emissions standards, they agreed to use a 16-liter tank out of their own desire to use a "coordinated approach" with respect to tank sizes. The "coordinated approach" was designed to prevent U.S. emissions regulators from questioning how some companies could use less AdBlue to meet emissions standards while others needed more to meet the requirements, which questions might arise if Defendants used different size tanks. Volkswagen, for example, was using a "defeat device" to cheat on emissions testing and make its German Luxury Vehicles appear to be emissions compliant when, in fact, they were not.

43.    As recently revealed, the conspirators determined that a "coordinated scenario" was needed to address their desires "across the board" and "avoid at all costs" an "arms race" among the manufacturers—i.e., the elimination of competition and the innovative benefits that flow from it.

## A.    Pending Investigations

44.    The ("EC") is investigating allegations that Defendants Volkswagen and its subsidiaries, Audi and Porsche, Daimler, and its subsidiaries Mercedes-Benz and Smart, and BMW, and others, colluded with respect to German Luxury Vehicles.

45.    EC competition authorities have obtained documents from the Defendants and have interviewed witnesses in connection with the alleged cartel.

46.    Volkswagen has admitted that Defendants entered into potentially unlawful agreements regarding "vehicle development, brakes, petrol and diesel

engines, clutches and transmissions as well as exhaust treatment systems." Likewise, Volkswagen and Daimler are reported to have gone to European regulators to admit their participation in an unlawful antitrust cartel, in exchange for leniency.

47.     In the United States, the Department of Justice, Antitrust Division has announced it is investigating the matter.

**B.     Defendants' Past Violations and Collusion**

48.     This is only the most recent of many schemes by these Defendants and other automobile manufacturers to evade U.S. laws.  Volkswagen admitted that it used unlawful "defeat devices" to cheat on diesel emissions tests.  In the United States alone, Volkswagen paid more than $20 billion in criminal penalties and civil restitution as a result of its unlawful scheme.

49.     In 2016, Daimler and other European truck makers (including Volkswagen-owned, MAN) were revealed to be parties to a truck price-fixing cartel. All except MAN paid record fines.  As alleged above, Volkswagen avoided fines by seeking leniency in exchange for cooperation with regulators.  Daimler paid more than $1 billion in fines to the EC for its role in the cartel.

**C.     The German Luxury Vehicles Market is Susceptible to Collusion**

50.     The collusion here is admitted by Volkswagen and Daimler.  It is, in any event, plausible because the German Luxury Vehicle market in the United States

has several characteristics that make it susceptible to collusion. Those characteristics are (1) high barriers to entry; (2) inelasticity of demand; and (3) high concentration.

51.    <u>High Barriers to Entry</u>: Collusion that lowers costs for manufacturers while increasing the price of the product normally would attract new market entrants.  However, where barriers to entry are high, new entrants are less likely to enter in response to supra-competitive pricing. Barriers to  entry thus facilitate cartels.

52.    Here, there are substantial barriers to entry into the German Luxury Vehicle market. A new entrant faces substantial start-up costs, including costs for plants  and equipment, distribution infrastructure, and skilled labor.  A new entrant also lacks long-standing customer relationships of incumbents.

53.    There are also high switching costs in that consumers are effectively locked into their German Luxury Vehicle purchases, making it more difficult for new entrants to gain customers needed to succeed in the market.

54.    Defendants' unlawful collusion also serves as and increases the barriers to entry.

55.    <u>Inelastic Demand</u>: The German Luxury Vehicle market also has inelastic demand.

56.    "Elasticity" is the sensitivity of changes of supply to changes in demand and vice versa.  When demand is relatively inelastic, a market is more susceptible to

a successful cartel because the cartel can raise prices without an off-setting decline in demand.

57.    Demand for German Luxury Vehicles is highly inelastic.  There are no close substitutes for German Luxury Vehicles, such that price increases do not trigger product substitution by consumers.

58.    <u>High Concentration</u>: A highly concentrated market also is more susceptible to collusion.

59.    Here, Defendants make up essentially 100% of the German Luxury Vehicle market.

## CLASS ALLEGATIONS

60.    Plaintiff brings this action on behalf of himself and as representative of a class under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Injunction Class"):

> All persons and entities who, during the Class Period, purchased or leased a new German Luxury Vehicle in the United States not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirator of the Defendants.

61.    Plaintiff also brings this action on behalf of himself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well

as unjust enrichment, on behalf of the following class (the "Indirect Purchaser Damages Class"):

> All persons and entities who, during the Class Period, purchased or leased a new German Luxury Vehicle in the Indirect Purchaser States [defined below] not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirators of the Defendants.

62. The Nationwide Injunction Class and the Indirect Purchaser Damages Class are referred to collectively as the "Classes."  Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased German Luxury Vehicles directly from any Defendant or for resale.

63. Plaintiff does not know the exact number of members in the Classes, but believe there are (at least) thousands of members in each Class.

64. Common questions of law and fact exist as to all members of the Classes.  Defendants' conspiracy was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. The questions of law and fact common to the Classes include:

(a) Whether the Defendants and their co-conspirators engaged in a combination and conspiracy to restrain competition and artificially inflate

the price of, and otherwise eliminate or restrain competition concerning, German Luxury Vehicles sold in the United States;

(b)     The identity of the conspirators;

(c)     The duration of the conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the conspiracy violated the Sherman Act;

(e)     Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws;

(f)     Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiff and the members of the Classes entitling Plaintiff and the Classes to disgorgement of benefits derived by Defendants;

(g)     Whether the conduct of the conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Classes;

(h)     The effect of the conspiracy on the prices of German Luxury Vehicles sold in the United States during the Class Period;

(i)     Whether Plaintiff and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)     Whether the conspirators fraudulently concealed the conspiracy's existence from Plaintiff and the members of the Classes;

(k)    The appropriate injunctive and related equitable relief for the Nationwide Injunction Class; and

(l)    The appropriate class-wide measure of damages for the Damages Class.

65.    Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members of the Classes are similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices for German Luxury Vehicles purchased from the Defendants and/or their co-conspirators.

66.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

67.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

68.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a

single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense if numerous individual actions. The benefits of proceeding as a class, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

69.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

## PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.    Plaintiff Did Not and Could Not Discover His Claims Until at Least July 21, 2017

70.    Plaintiff repeats and re-alleges the allegations set forth above.  Plaintiff and members of the Classes had no knowledge of the conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) July 21, 2017, when the German publication *Der Spiegel* reported that Volkswagen disclosed its participation in the unlawful conspiracy.

71.    Plaintiff and members of the Classes are consumers and businesses that purchased or leased Defendants' German Luxury Vehicles in the United States and not for resale.   They had no direct relationship or communication with the

Defendants and therefore had no means by which they could have discovered the combination and conspiracy described before it began to be revealed in *Der Spiegel*.

72.    No information was available to Plaintiff and members of the Classes in the public domain prior to July 21, 2017 that disclosed Defendants' participation in unlawful coordination concerning the development of their vehicles, their costs and suppliers, or their and strategies for controlling emissions in diesel engines.

73.    For these reasons, the statute of limitations as to Plaintiff's and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and members of the Classes have alleged herein.

74.    All applicable statutes of limitations for Plaintiff's and the Classes' claims have been tolled under the doctrine of fraudulent concealment.  Plaintiff and members of the Classes did not discover, and could not have discovered through reasonable diligence, the existence of the conspiracy alleged herein until at least July 21, 2017, when *Der Spiegel* began to disclose the Defendants' conspiracy.

75.    Before that time, Plaintiff and members of the Classes were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for German Luxury Vehicles throughout the United States during the Class Period. No information, actual or constructive, was made available to Plaintiff and members of the Classes that indicated to Plaintiff that they were being injured by Defendants' unlawful conduct.  Moreover, the affirmative acts of

Defendants, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection, including through years of admittedly "secret" meetings.

76.    The Defendants' conspiracy also was inherently self-concealing. German Luxury Vehicles are subject to antitrust regulation.  A reasonable person under the circumstances would have believed the industry was competitive and not have been alerted to begin to investigate the legitimacy of Defendants' German Luxury Vehicle prices before July 21, 2017 at the earliest.

77.    Plaintiff and the members of the Classes could not have discovered the alleged contract, combination or conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

78.    Throughout the course of the conspiracy, Defendants met secretly to communicate, and ultimately coordinate, about various aspects of the German Luxury Vehicles industry, including technology, costs, supplies, markets, and emissions equipment. The Defendants' surreptitious meetings were concealed until at least July 21, 2017.

79.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and

members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until at least July 21, 2017, when *Der Spiegel* began to report Volkswagen's disclosure of the conspiracy.

80.    For these reasons, the statute of limitations applicable to Plaintiff and the Classes' claims was tolled and did not begin to run until, at the earliest July 21, 2017.

## FIRST CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiff and the Nationwide Injunction Class)

81.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

82.    Defendants and their co-conspirators entered into and have and are engaged in a continuing contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

83.    The acts done by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

84.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to

artificially fix, raise, stabilize, and control prices for German Luxury Vehicles, thereby creating anticompetitive effects.

85.    The anticompetitive acts were intentionally directed at the United States market for German Luxury Vehicles, and had a direct, substantial and foreseeable effect on interstate commerce by artificially raising prices of German Luxury Vehicles throughout the United States.

86.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for German Luxury Vehicles in the United States.

87.    As a result of Defendants' unlawful conduct, Plaintiff and other similarly-situated indirect purchasers in the Nationwide Injunction Class who purchased German Luxury Vehicles (and not for resale) have been harmed by being forced to pay inflated, supra-competitive prices for German Luxury Vehicles.

88.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did the acts, practices and course of conduct alleged in this Complaint, as well as other acts and conduct they agreed to.

89.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for German Luxury Vehicles has been restrained, suppressed, and/or eliminated in the United States;

(b)     Prices for German Luxury Vehicles sold by Defendants and their co- conspirators have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels throughout the United States; and

(c)     Plaintiff and members of the Nationwide Injunction Class who purchased German Luxury Vehicles indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

90.    Plaintiff and  members of the Nationwide Injunction Class have been injured and will continue to be injured in their business and property by paying more for German Luxury Vehicles purchased from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

91.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

92.    Plaintiff and members of the Nationwide Injunction Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## SECOND CLAIM FOR RELIEF

**Violation of State Antitrust Statutes
(on behalf of Plaintiff and the Indirect
Purchasers Damages Class)**

93.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

94.    During the Class Period, Defendants and their co-conspirators have and are engaged  in  a continuing contract, combination or conspiracy with respect to the sale of German Luxury Vehicles in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

95.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States.

96.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators acted in furtherance of the combination and conspiracy, including participating in meetings and conversations among themselves in the United States and elsewhere, during which they agreed to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States among other unlawful and anti-competitive effects.

97.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States among other unlawful and anti-competitive ends.

98.    Defendants' anticompetitive acts described above were knowing and willful and constitute violations and/or flagrant violations of the following state antitrust statutes.

99.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, et seq.

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Arizona; (2) German Luxury Vehicles prices were raised to artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition on price and other aspects of German Luxury Vehicles; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, et seq.

Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44- 1401, *et seq*.

100.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*.

(a)   During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States, as well as other unlawful and anti-competitive ends.

(b)   The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States and for other unlawful and anti-competitive ends.

(c)   For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they

29

combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and fixing, raising, stabilizing, and pegging the price of German Luxury Vehicles and creating other anti-competitive effects.

(d)    The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) Price and other competition in the sale of German Luxury Vehicles has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for German Luxury Vehicles sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States, in addition to other anti-competitive effects; and (3) those who purchased German Luxury Vehicles directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition on price and other aspects of German Luxury Vehicles.

(e)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for German Luxury Vehicles than they otherwise would have paid in the absence of Defendants' unlawful conduct and were otherwise deprived of the benefits of free and open

competition among manufacturers of German Luxury Vehicles. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

101.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq*.

(a)   Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia among other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition on price and other aspects of German Luxury Vehicles; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)   During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, et seq. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

102.   The Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Iowa; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

103.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Kansas; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Kansas, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German

Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50- 101, *et seq*.

104.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Maine; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Maine, as well as other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open

competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq*.

105.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq*.

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Michigan; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Michigan, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and

open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

106.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq*.

(a)      Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Minnesota; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Minnesota, and other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free

36

and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

107.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)   Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Mississippi; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Mississippi, and other anti-competitive

effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq*.

108.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq*.

(a)    Defendants' combinations or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Nebraska; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at

artificially high prices throughout Nebraska, and other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq*.

109.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq*.

(a)    Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Nevada; (2) German

Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Nevada, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles as well as the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq*.

110.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout New Hampshire; (2)

40

German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New Hampshire, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

111.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout New Mexico; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New Mexico, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57- 1-1, *et seq*.

112.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq*.

(a)   Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout New York; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New York, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles when they purchased German Luxury Vehicles, or purchased products that were otherwise of lower quality than they would have been absent the conspirators' illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct and were otherwise deprived of the benefits of free and open competition.

(b)   During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

43

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*.  The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

113.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout North Carolina; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout North Carolina, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq.*

114.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout North Dakota; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout North Dakota, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

115.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Oregon; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury

Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

116.  Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout South Dakota; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout South Dakota, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the

Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

117.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Tennessee; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Tennessee, in addition to other anti-

competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq*.

118.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Utah; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially

high prices throughout Utah, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq*.

119. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout Vermont; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at

artificially high prices throughout Vermont, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*.  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

120.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was restrained, suppressed, and eliminated throughout West Virginia; (2) German

Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout West Virginia, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)   During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18- 1, *et seq*.

121.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)   Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price and other competition was

restrained, suppressed, and eliminated throughout Wisconsin; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Wisconsin, in addition to other anti-competitive effects; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles and were otherwise deprived of the benefits of free and open competition.

(b)   During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

122.   Plaintiff and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiff and members of the

Damages Class have paid more for German Luxury Vehicles than they otherwise would in the absence of Defendants' unlawful conduct.  This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

123.   In addition, Defendants have profited significantly from the aforesaid conspiracy.  Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiff and the members of the Damages Class.

124.   Accordingly, Plaintiff and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## THIRD CLAIM FOR RELIEF

### Violation of State Consumer Protection Statutes (on behalf of Plaintiff and the Damages Class)

125.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

126.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

127. Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq*.

(a)    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Arkansas, and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)    The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Arkansas; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

128.   Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq*.

(a)     During the Class Period, Defendants marketed, sold, or distributed German Luxury Vehicles in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, et seq. of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the

California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; and (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above.

(d)     Defendants' acts, omissions, misrepresentations, practices, and non- disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

129.  Defendants' acts or practices are unfair to consumers of German Luxury Vehicles in the State of California within the meaning of Section 17200, California Business and Professions Code.

(a)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(b)     Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(c)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(d)     The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiff and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for German Luxury Vehicles. Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(e)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(f)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the

Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

130. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq*.

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at artificial and/or non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in the District of Columbia.

(b)    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiff was not aware of Defendants' conspiracy to artificially raise prices and was therefore unaware that he was being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for German Luxury Vehicles. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing German

Luxury Vehicles because he was unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of German Luxury Vehicles, including their illegal conspiracy to raise the prices of German Luxury Vehicles to supra-competitive, artificially high levels, was substantively unconscionable because it was one- sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for German Luxury Vehicles.

(c)      Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and the Damages Class were deprived of free and open competition; and (4) Plaintiff and the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

131.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Florida; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

61

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

132.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

133.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(a)     Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial or non-competitive levels, the prices at which Luxury Vehicles were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(c)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) German Luxury Vehicles prices

were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class were injured and are threatened with further injury.

(e)     Certain of the Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth. More than thirty days has passed since such demand letters were served, and each Defendant served has failed to make a reasonable settlement offer.

(f)     By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, § 2. Defendants' and their co- conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiff and members of the Damages Class to multiple damages.

134. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.

(a)     Plaintiff and the Damages Class purchased German Luxury Vehicles for personal, family, or household purposes.

(b)     Defendants engaged in the conduct described herein in connection with the sale of German Luxury Vehicles in trade or commerce in a market that includes Missouri.

(c)     Defendants and their co-conspirators agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for German Luxury Vehicles. The concealed, suppressed, and omitted facts would have

been important to Plaintiff and members of the Damages Class as they related to the cost of German Luxury Vehicles they purchased.

(e)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in German Luxury Vehicles by making public statements that were not in accord with the facts.

(f)     Defendants' statements and conduct concerning the price of German Luxury Vehicles were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing German Luxury Vehicles at prices established by a free and fair market.

(g)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Missouri; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(h)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property.

(j)     Accordingly, Plaintiff and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq*., 15 CSR 60-8.010, et seq., and 15 CSR 60-9.010, *et seq*., and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

135. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq*.

(a)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Montana; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout;

(3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

136. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a)   Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non- competitive and artificially inflated levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in New

Mexico and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for German Luxury Vehicles as set forth in N.M.S.A., § 57-12-2E. Plaintiff was not aware of Defendants' conspiracy to artificially inflate the prices of Germany Luxury Vehicles and was therefore unaware that he was being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for German Luxury Vehicles. Defendants had the sole power to set that price and Plaintiff had no power to negotiate a lower price. Moreover, Plaintiff lacked any meaningful choice in purchasing German Luxury Vehicles because he was unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiff could avoid the overcharges. Defendants' conduct with regard to sales of German Luxury Vehicles, including their illegal conspiracy to secretly fix the price of German Luxury Vehicles at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited

Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for German Luxury Vehicles.

(c)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq*.,

and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

137. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

    (a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

    (b)    Defendants and their co-conspirators made public statements about the prices of German Luxury Vehicles and products containing German Luxury Vehicles that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for German Luxury Vehicles and products containing German Luxury Vehicles; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)     Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who purchased German Luxury Vehicles were misled to believe that they were paying a fair price for German Luxury Vehicles or the price increases for German Luxury Vehicles were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)     Defendants knew that their unlawful trade practices with respect to pricing German Luxury Vehicles would have an impact on New York consumers and not just the Defendants' direct customers.

(e)     Defendants knew that their unlawful trade practices with respect to pricing German Luxury Vehicles would have a broad impact, causing class members who purchased German Luxury Vehicles to be injured by paying more for German Luxury Vehicles than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)     The conduct of the Defendants described herein constitutes consumer- oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout New York; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(h)     During the Class Period, Defendants' marketed, sold, or distributed German Luxury Vehicles in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed German Luxury Vehicles in New York.

(j)     Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

138.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff could not possibly have been aware. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. Defendants' public statements concerning the price of German Luxury Vehicles created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The conduct of the Defendants described herein constitutes consumer- oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(e)     During the Class Period, Defendants' marketed, sold, or distributed German Luxury Vehicles in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled,

manufactured, sold and/or distributed German Luxury Vehicles in North Carolina.

(g)     Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

139. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq*.

(a)     Members of this Damages Class purchased German Luxury Vehicles for personal, family, or household purposes.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Rhode Island.

(c)     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants'

unlawful activities and artificially inflated prices for German Luxury Vehicles. Defendants owed a duty to disclose such facts. Defendants breached that duty by their silence. Defendants misrepresented to all Class Members during the Class Period that Defendants' German Luxury Vehicles prices were competitive and fair.

(d)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(e)     As a direct and proximate result of the Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(f) Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of German Luxury Vehicles, likely misled all Class Members acting reasonably under the circumstances to believe that they were purchasing German Luxury Vehicles at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of German Luxury Vehicles they purchased.

(g) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

140. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*.

(a) Defendants' combination or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout; South Carolina; (3) Plaintiff and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

141. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants and their co-conspirators agreed to, and did in fact, raise the prices of German Luxury Vehicles by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning their unlawful activities and artificially inflated prices for German Luxury Vehicles. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their German Luxury Vehicles prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Vermont; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

(d)     As a direct and proximate result of Defendants' violations of law,

(e)     Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

(f)     Defendants' deception, including their omissions concerning the price of German Luxury Vehicles, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing German Luxury Vehicles at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

## FOURTH CLAIM FOR RELIEF

**Unjust Enrichment**
**(on behalf of Plaintiff and the**
**Damages Class)**

142.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

143.   Plaintiff brings this claim under the laws of all states listed in the Second and Third Claims, supra.

144.   As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of German Luxury Vehicles.

145.   Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiff and the members of the Damages Class for German Luxury Vehicles.

146.   Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a pro rata basis.

147.   Pursuit of any remedies against the firms from which Plaintiff and the members of the Damages Class purchased Vehicles containing German Luxury Vehicles subject to Defendants' conspiracy would have been futile.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiff respectfully requests that:

148.   The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

149. That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act;

(c)    An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)    Acts of unjust enrichment by Defendants as set forth herein.

150. Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

151. Plaintiff and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

152. Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the

conduct, contract, conspiracy, or combination  alleged herein, or from entering into any other contract, conspiracy, or combination having a  similar purpose or effect, and from adopting or following any practice, plan, program, or device  having a similar purpose or effect;

153.   Plaintiff and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

154.   Plaintiff and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

155.   Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

156.   Plaintiff and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands, for himself and the Classes, a trial by jury, pursuant to the Federal Rules of Civil Procedure, of all issues so triable.

DATE: July 28, 2017

Respectfully submitted,

SEEGER WEISS LLP

By:  /s/ *Christopher A. Seeger*
       Christopher A. Seeger

Christopher A. Seeger
David R. Buchanan
SEEGER WEISS LLP
550 Broad Street, Ste. 920
Newark, NJ 07102
Tel.: 973-639-9100
Fax: 973-639-9393
E-mail: cseeger@seegerweiss.com
E-mail: dbuchanan@seegerweiss.com

Jennifer Scullion
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, NY 10005
Tel.: (212) 584-0700
Fax: (212) 584-0799
E-mail: jscullion@seegerweiss.com
(*pro hac vice* application
 forthcoming)

*Attorneys for Plaintiff*